UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER GOMEZ,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY,<br><br>　　　　　　　　　　Defendant. | Case No.: 21-CV-1324-JAH-WVG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT** |

## I. INTRODUCTION

Pending before the Court is Defendant Great-West Life & Annuity Insurance Company's ("Defendant" or "Great-West") motion to dismiss Count II of Plaintiff Jennifer Gomez's ("Plaintiff" or "Dr. Gomez") complaint. (ECF No. 6). The motion has been fully briefed. (ECF Nos. 6, 8-9, 11). Having considered the parties' submissions, the Court **DENIES** Defendant's motion to dismiss Count II of Plaintiff's complaint.

## II. PROCEDURAL BACKGROUND

Plaintiff filed a complaint against Defendant on July 22, 2021, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 1). On October 4, 2021, Defendant filed a motion to dismiss Count II of the complaint. (ECF No. 6). Plaintiff responded in opposition, (ECF No. 8), to which Defendant replied. (ECF

No. 9). Plaintiff also filed an amended declaration in opposition to the Defendant's motion. (ECF No. 11).

### III. FACTUAL BACKGROUND[1]

Defendant issued a group policy (the "Policy") through the American Dental Association ("ADA") to Plaintiff, and Plaintiff performed all of her obligations under the Policy. That Policy contained an Illinois choice-of-law provision. On or about April 9, 2015, Plaintiff suffered a compensable loss under the terms of the Policy and submitted a claim for long term disability benefits to Defendant, who approved and paid Plaintiff from approximately July 8, 2015 through January 31, 2021.

On December 18, 2020, Defendant informed Plaintiff that it would be terminating long term disability payments to Plaintiff, as they determined that Plaintiff was no longer totally disabled as defined by the Policy, and instead residually disabled. Plaintiff filed a formal appeal, which Defendant denied.

Plaintiff contends that she continues to be unable to perform the substantial and material duties of her occupation due to her conditions, and that Defendant's erroneous determination has deprived her of her right to obtain benefits under the Policy.

### IV. LEGAL STANDARD

**A. Standard for a Motion to Dismiss Under FRCP 12(b)(6)**

Great-West has moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), which tests the legal sufficiency of the claim asserted. Fed. R. Civ. P. 12(b)(6). A complaint does not require detailed allegations to survive dismissal; instead, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] This is a recitation of pleaded facts for purposes of the instant motion to dismiss, and should not be construed as findings of fact.

(2009) (citing *Twombly*, 550 U.S. at 556). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).

On a motion to dismiss, the court "accept[s] as true all of the factual allegations set out in plaintiff's complaint, draw[s] inference from those allegations in the light most favorable to plaintiff, and construe[s] the complaint liberally." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). "The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the plaintiff's claim." *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1121 (C.D. Cal. 2000) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987)).

## V.     DISCUSSION

Great-West has moved to dismiss Count II of Plaintiff's claim, arguing that because Illinois law applies to the dispute, and Illinois law does not recognize a claim for breach of the covenant of good faith and fair dealing in the insurance context, Plaintiff's Count II is not a cognizable claim. (ECF No. 6-1 at 6). Dr. Gomez argues that California law applies to the dispute, and because California law recognizes the relevant claim, Count II should not be dismissed. (ECF No. 8).

Because the Court's jurisdiction here is based on diversity, we apply the forum state's choice-of-law rules. *KST Data, Inc. v. DXC Tech. Co.*, 836 F. App'x 484, 486 (9th Cir. 2020) (citing *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015)). California courts apply the principles in Restatement (Second) of Conflict of Laws § 187 to resolve disputes involving the enforcement of a choice-of-law provision. *Id.* Under § 187, "the law of the state chosen by the parties applies unless either (1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties [sic] choice, or (2) the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* (internal quotations omitted). The Court addresses each in turn.

### A. Illinois Has a Substantial Relationship to the Parties or the Transaction and No Reasonable Basis Exists for the Parties' Choice

Under the first prong of § 187, the Court considers whether Illinois has a substantial relationship to the parties or the transaction, as well as whether a reasonable basis for applying Illinois law exists. "If there is no substantial relationship between the parties and the chosen state or no reasonable basis for the parties' choice of law, that is the end of the inquiry, and the court need not enforce the parties' choice of law." *KST Data, Inc.*, 836 Fed. Appx. at 487. The initial burden for demonstrating either a substantial relationship or a reasonable basis falls on the party seeking to enforce the choice-of-law provision. *Pulte Home Corp. v. Am. Safety Indem. Co.*, 268 F. Supp. 3d 1091, 1095 (S.D. Cal. 2017) (citations omitted).

Great-West argues that Illinois has a substantial relationship to the parties because the ADA is headquartered in Illinois and relies primarily on *Harrington* to support their proposition, claiming that the district court "rul[ed] that Illinois had a 'substantial relationship' to the parties" in a dispute involving the same group ADA policy and choice-of-law provision. (ECF No. 6-1 at 12). Dr. Gomez does not argue otherwise. While the ultimate result is the same, the *Harrington* court did not make a determination on substantial relationship, and instead found that there was a reasonable basis for the application of the Illinois choice-of-law in light of the location of the ADA and its role in negotiating the terms of the plan. Applying that same reasoning here, this Court finds that there is a reasonable basis for the application of the Illinois choice-of-law provision.

### B. The Application of Illinois Law is Contrary to a Fundamental Policy of California, Which has a Materially Greater Interest in the Resolution of the Issue

Because Great-West has satisfied its initial burden to demonstrate a reasonable basis for the application of the Illinois choice-of-law provision, the court next considers whether the application of the Illinois choice-of-law provision (1) is contrary to a fundamental policy of California and (2) whether California has a materially greater interest in

resolution of the issue. *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012) (citing *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1152 (1992)). The Court discusses each in turn below.

        a. <u>Application of Illinois Law Would Be Contrary to a Fundamental Policy of California</u>

Dr. Gomez argues that the "California Supreme Court clarified decades ago, due to public policy reasons, [that] insurance bad faith is a unique form of contract breach which yields tort remedies, unlike any other contract," and that application of Illinois law would be contrary to this fundamental Californian policy because it would take away her ability to bring a tort action for insurance bad faith. (ECF No. 8 at 10-11). Great-West argues that application of Illinois law would not be contrary to a fundamental policy of California because Illinois provides extracontractual damages via statute for bad faith insurance conduct, and that a disparity in particular remedies and damages does not violate a fundamental policy. (ECF No. 6-1 at 14-15).

        i. *Recognizing a Remedy for Insurance Bad Faith is a Fundamental Policy of California*

"California courts have recognized that there are no 'bright line rules for determining what is and what is not contrary to a fundamental policy of California.'" *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1168 (S.D. Cal. 2015) (citation omitted). To be "fundamental", the "policy must be a substantial one." *Id.* (citing *Brack v. Omni Loan Co.*, 164 Cal.App.4th 1312, 1323 (2008)). Fundamental policies "may be embodied in a statute which . . . is designed to protect a person against the oppressive use of superior bargaining power. Statutes involving the rights of an individual insured as against an insurance company are an example of this sort." Comment (g) to Restatement (Second) of Conflict of Laws § 187 (1971).

California's appellate decisions establish that the recognition of a remedy for insurance bad faith is a fundamental policy of California. As discussed by the court in

*Phan I* and *Phan II*,[2] a review of the California Supreme Court's decisions in *Foley* and *Egan* demonstrates that the "refusal to extend tort remedies for breaches of employment contracts . . . while permitting tort remedies for breach[es] of the covenant of good faith by an insurer . . . signals that the availability of a bad faith tort action in the insurance context is a deliberately-created, fundamental California policy." *Phan I*, 2013 WL 12133645, at *3 (citations omitted).

That conclusion is also supported by several relevant policy considerations, as discussed in *Tri-Union*. First, the California Supreme Court "has recognized the 'special relationship' of the insured and the insurer", acknowledging that "the relationship is . . . inherently unbalanced," *Tri-Union*, 88 F.Supp.3d at 1168-69 (citing *Foley*, 47 Cal.3d at 685, 687)). Second, the California Supreme Court "has [] recognized that insurance contracts are unique based on their purpose" because they are purchased for "peace of mind" and not "for profit or advantage[.]" *Id.* at 1169 (citing *Cates*, 21 Cal.4th at 44). Third, "the insurance context is . . . distinct based on the lack of remedies available to an insured upon an insurer's breach." *Id.* at 1170.[3]

Indeed, several other district courts beyond the *Phan* and *Tri-Union* courts have recognized that remedies for insurance bad faith constitutes a fundamental policy of California. *See, e.g., Tutor-Saliba Corp. v. Starr Excess Liab. Ins. Co., Ltd.,* No. CV 15-1253 PSG (RZX), 2015 WL 13285089, at *4 (C.D. Cal. 2015) (explaining that "New York law conflicts with a relevant fundamental policy of California law because it does not recognize extra-contractual or tort remedies for an insurer's bad faith conduct") (citation

---

[2] *Phan I* and *Phan II* refer to *Phan v. Great-W. Life & Annuity Ins. Co.*, No. CV 13-1318 GAF (ANX), 2013 WL 12133645 (C.D. Cal. Apr. 30, 2013) and *Phan v. Great-W. Life & Annuity Ins. Co.*, No. CV 13-1318 GAF (ANX), 2013 WL 12136598 (C.D. Cal. July 24, 2013), respectively.

[3] The Court recognizes that *Tri-Union* involved the potential application of New York law, which does not provide an extra-contractual remedy for an insurer's bad faith, whereas Illinois provides an inferior remedy. Nonetheless, the Court finds that the underlying principle applies here in favor of Plaintiff, though with less weight.

omitted); *Brighton v. Lutheran Church-Missouri Synod*, 2013 WL 12136522, at *4 (C.D. Cal. 2013) ("California's decision to allow punitive and extra-contractual damages in insurance bad faith cases reflects a fundamental state policy of protecting California citizens from exploitative behavior by insurers"); *Connex R.R. LLC v. AXA Corp. Sols. Assurance*, 209 F. Supp. 3d 1147, 1151 (C.D. Cal. 2016) (explaining that "[a]n insured's right to bring bad faith claims for tort and punitive damages against an insurer is fundamental to California's public policy in this area").

> ii. *Recognizing a Tort Remedy for Insurance Bad Faith is a Fundamental Policy of California, Even Where the Alternate Forum Provides an Inferior Statutory Remedy*

The Court is persuaded that recognizing a remedy for insurance bad faith is a fundamental policy of California. The more difficult question is whether that policy is contravened where the alternate state's law recognizes an extracontractual, albeit inferior,[4] remedy for such conduct, as with Illinois. District courts have split on this question; while Great-West is correct in asserting that *Meshi*, *Harrington*, and other courts have held that statutory or extra-contractual remedies are sufficient to avoid contravening the fundamental policy, Dr. Gomez is also correct that *Phan I & II* suggests the opposite.

On this point, it is instructive that California courts have specifically recognized that a ***tort*** remedy for insurance bad faith and the availability of punitive damages are a fundamental policy of California, instead of more general remedies. *See, e.g.*, *Connex*, 209 F. Supp. 3d at 1151 (explaining that "[a]n insured's right to bring bad faith claims for ***tort and punitive damages*** against an insurer is fundamental to California's public policy in this area") (emphasis added); *Brighton*, 2013 WL 12136522, at *4 ("California's decision to allow ***punitive*** and extra-contractual damages in insurance bad faith cases reflects a fundamental state policy of protecting California citizens from exploitative behavior by insurers") (emphasis added); *Phan II*, 2013 WL 12136598, at *3 (explaining that "*Egan*

---

[4] As the *Meshi* court notes, "statutory extracontractual remedies under Illinois law . . . do not cover emotional distress, future policy disability benefits, and punitive damages", unlike California. *Meshi*, 2018 WL 7473961, at *3.

was one in a long series of California decisions that firmly embedded the principle that the breach of the covenant of good faith and fair dealing in insurance contracts created a **tort remedy** under California law") (citations omitted, emphasis added). As such, and in light of the considerations discussed by the *Tri-Union* court, this Court is persuaded that providing a tort remedy and punitive damages for insurance bad faith is a fundamental policy of California that is more protective of its citizens than remedies provided under Illinois law.

### iii. Great-West's Reliance on Wissot is Inapposite

Great-West also relies on the Ninth Circuit's decision in *Wissot* to argue that no fundamental policy is contravened here. (ECF No. 9 at 8). However, *Wissot* addressed whether the "process of nature" rule is a fundamental policy of California, not whether an insured's right to bring a tort for the bad faith conduct of the insurer is a fundamental policy. *Wissot v. Great-W. Life & Annuity Ins. Co.*, 619 F. App'x 603, 604 (9th Cir. 2015). The "process of nature" rule at issue in *Wissot* is a "common law doctrine . . . requiring that an injury manifest itself within a certain time period." *Buchanan v. Standard Ins. Co.*, No. 05-16651, 2007 WL 2988756, at *1 (9th Cir. 2007). This is demonstrably different from the proposed fundamental policy at issue here. Because the Ninth Circuit's analysis in *Wissot* is limited to a discussion of the process of nature rule only, the Court declines to find for Defendant on the basis of *Wissot*.

### b. California Has the Greater Material Interest

Having determined that application of Illinois law is arguably contrary to fundamental policy, the Court next considers "whether California has a materially greater interest than the chosen state in resolution of the issue." *ABF Cap. Corp., a Delaware Corp. v. Osley*, 414 F.3d 1061, 1066 (9th Cir. 2005) (citation omitted).

### i. Parties' Arguments

Great-West argues that Illinois has a materially greater interest because "there exists a strong interest in uniformity with respect to group insurance policies" and "the determination of the issues relating to Dr. Gomez's claims and the ADA's group policy"

falls under that category. (ECF No. 6-1 at 15) (citing cases). Great-West relies primarily on *Wissot*, where the Ninth Circuit held that California's interest in enforcing the "process of nature rule" was attenuated in the context of a group insurance plan, and in light of California's deference to choice-of-law provisions, enforced the Illinois choice-of-law provision. *Wissot*, 619 F. App'x at 605-606. Great-West also dismisses California's connections to the case as "tangential." (ECF No. 6-1 at 17).

Dr. Gomez contends that California has the materially greater interest because the Policy certificate was issued and delivered to Dr. Gomez in California; the policy was "negotiated" in California insofar as that is where she made the purchase; the contract was performed in California; the subject matter of the contract – Plaintiff – resides in California; and the parties are domiciled in California and Colorado, not Illinois. Dr. Gomez relies principally on *Phan I, Phan II,* and *Tri-Union*.

### ii. On Balance, the Relevant Factors Suggest that California, Not Illinois, Has the Materially Greater Interest

To determine which state has the materially greater interest, the Court considers "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and, (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Tri-Union*, 88 F. Supp. at 1170 (citing *Ruiz*, 667 F.3d at 1324)).

A straightforward application of these factors suggests that California has a materially greater interest, as the contract was performed in California, Plaintiff suffered her disabling illness in California, the subject matter of the contract is in California, and the parties are domiciled in California and Colorado, but not Illinois. *See, e.g., Brighton*, 2013 WL 12136522, at *5 (finding that California has the materially greater interest because "Plaintiff is a California citizen, acquired the Plan as a benefit of her employment in California, and suffered her allegedly-disabling illness in California") (citing *Nichols v. Nw. Mut. Life Ins. Co.*, 487 F. App'x 339, 342 (9th Cir. 2012)); *Connex*, 209 F. Supp. 3d at 1151 (finding that California has a "strong local interest in adjudicating" the matter because

the "harm that Plaintiff allegedly suffered . . . occurred in California" and the defendant allegedly "failed to fulfill its contractual obligations in California"). Furthermore, to the extent Great-West seeks to rely on *Wissot*, the holdings in that case were based in part on the fact that the ADA was *a party* to the lawsuit. Here, the ADA is not a party to the lawsuit, and neither is any Illinois resident or business.

### iii. California's Deference to Choice of Law Provisions and the Strong Interest in Uniformity

In addition to the factors enumerated above, the Court also considers California's deference to choice-of-law provisions and the strong interest in uniformity for group insurance policies in determining which state has the materially greater interest. First, while the Court recognizes that California has a strong deference to choice of law provisions,[5] that deference is not dispositive. Where, as here, the weight of the relevant factors indicate that California has the materially greater interest, the Court declines to find otherwise based only on deference to the choice-of-law provision.

Second, while Great-West finds support in §192 of the Restatement (Second) of Conflict of Laws, which notes that there "exists a strong interest in uniformity with respect to group insurance policies", (ECF No. 6-1 at 15), the *Phan* court addressed this specific argument and explained that while "the Restatement is persuasive authority, the Court cannot simply ignore the *Nedlloyd* standard, even where it counsels in favor of a result seemingly contrary to language in the Restatement." *Phan I*, 2013 WL 12133645, at *4. This Court finds the analysis in *Phan* persuasive. Despite the strong interest in uniformity with respect to group insurance policies, there is no Illinois-domiciled party in this case, and California has the materially greater interest in the resolution of a dispute involving a California resident, a disabling injury suffered in California, and a contract performed in California.

---

[5] *See, e.g.*, *Aramark Mgmt., LLC v. Borgquist*, No. SACV1801888AGKESX, 2019 WL 2880414, at *2 (C.D. Cal. May 6, 2019) (explaining that "[u]nder California choice of law principles, courts generally give deference to choice-of-law provisions in contracts").

In sum, the Court finds that there is a reasonable basis for the application of the Illinois choice-of-law provision, but finds that such an application would be contrary to a fundamental policy of California insofar as it prevents Dr. Gomez from pursuing broader tort remedies for insurance bad faith, and further finds that California has a materially greater interest vis-à-vis Illinois after a review of the relevant factors. Accordingly, the Court declines to enforce the Illinois choice-of-law provision and instead applies California law to the dispute. Because California recognizes a tort remedy for insurance bad faith, as discussed above, the Court **DENIES** Great-West's motion to dismiss Count II of Plaintiff's claim.

### VI.  CONCLUSION

It is hereby ORDERED: Defendant's motion to dismiss Count II of the Plaintiff's complaint is **DENIED**.

**IT IS SO ORDERED.**

DATED:   November 3, 2022

_____
HON. JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE